IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Anthony E. Gause, as Personal Representative of the Estate of Karen C. Gause, | ) ) ) ) | Case No.4:24-cv-00201-JD |
| Plaintiff, | ) ) ) | **Order and Opinion** |
| vs. | ) ) | |
| Metropolitan Life Insurance Company | ) ) ) ) | |
| Defendant. | ) ) | |

This is a breach of contract case, and Defendant Metropolitan Life Insurance Company ("MetLife") moves under Rule 12(b)(6), Fed. R. Civ. P., to dismiss Plaintiff Anthony E. Gause, as personal representative of the estate of Karen C. Gause's ("Plaintiff") case with prejudice. (DE 15.) After reviewing the pleadings and the motion and memoranda submitted, the Court grants MetLife's Motion to Dismiss.

**BACKGROUND**

These facts are taken from Plaintiff's Amended Complaint and are taken as true. Anthony E. Gause is the son of Anthony Gause ("Decedent") and Karen C. Gause ("Karen"). (DE 14 at 2 ¶ 4.) Decedent was employed with the State of South Carolina. (*Id.*) As an employee of the State of South Carolina, Decedent was provided with life insurance through a Group Life Insurance Policy ("Policy"). (*Id.*) The Policy was fully insured and funded by MetLife. (*Id.*) The Decedent named his wife, Karen,

1

as the beneficiary of the Policy. (*Id.*) Plaintiff brings this action as the Personal Representative of his mother, Karen. (DE 14 at 3 ¶ 8.)

The Insurance Benefits Guide for the Policy provides these terms[1]:

> **When your coverage ends**
>
> Termination of coverage
>
> Your insurance will end at midnight on the earliest of:
> - The last day of the month you terminate your employment;
> - The last day of the month you go on unapproved leave of absence;
> - The last day of the month you enter a class of employees not eligible for coverage (for example, a change from full-time to part-time status);
> - The date PEBA's policy ends; or
> - The last day of the month you do not pay the required premium for that month.
>
> . . . .
>
> Claims incurred before the date insurance coverage ends will not be affected by coverage termination.

(DE 15-2 at 13.)

> **Death benefit during conversion period**
>
> *If you die within 31 days of the date your group insurance was terminated and meet the conversion eligibility requirements, MetLife will pay a death benefit* regardless of whether an application for coverage under an individual policy has been submitted. The death benefit will be the amount of insurance you would have been eligible to convert under the terms of the Conversion Right section.

(*Id.* at 14.) (emphasis added.)

---

[1] MetLife relies on the Insurance Benefits Guide and the Certificate to the Policy to support its motion. A portion of the Insurance Benefits Guide is attached to Plaintiff's Amended Complaint. (DE 14-1.) To that end, the Court will consider these documents without converting the motion to a motion for summary judgment. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("We may also consider documents attached to the complaint, *see* Fed.R.Civ.P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic.").

The terms of the Policy also provided notice of the right to continue coverage or convert coverage to an individual policy. The portions of the Policy that are relevant to continuation are as follows:

> **Continuation**
>
> *If you are eligible for retiree insurance, you may be able to continue your insurance coverage* and pay premiums directly to MetLife. MetLife will mail you a conversion/continuation packet. Packets are sent via U.S. mail three to five business days after MetLife receives the eligibility file from PEBA. To continue your coverage, complete the form that will be included in your packet from MetLife. Coverage is lost due to approved retirement or approved disability retirement.

(*Id.*) (emphasis added.) The portions of the Policy that are relevant to conversion are as follows:

> **Conversion**
>
> If your Basic, Optional or Dependent Life Insurance ends because your employment or eligibility for coverage ends, you may apply to convert your coverage to an individual whole life insurance policy, a permanent form of life insurance, without providing medical evidence. MetLife will mail you a conversion packet. Packets are sent via U.S. mail three to five business days after MetLife receives the eligibility file from PEBA. To convert your coverage, follow the instructions included in your packet from MetLife. The policy will be issued without medical evidence if you apply for and pay the premium within 31 days.

(*Id.*)

Plaintiff alleges Decedent's coverage under the Policy ended on January 1, 2023, when Decedent retired. (DE 14 at 2 ¶ 5.) Thereafter, "[o]n February 15, 2023, [Decedent] was provided the Notice of Group Life Insurance Conversion Privilege to complete so that he could continue his group life insurance coverage as an eligible retiree." (*Id.*) However, before Decedent could complete these documents, Decedent passed away on February 16, 2023. (*Id.* at 3 ¶ 6.) Following Decedent's passing,

"Plaintiff, on [Decedent's] behalf, completed and submitted the "Retiree Life Continuation Enrollment Form, and the same was submitted to [MetLife] on March 2, 2023." (*Id.*)  Soon after, on March 23, 2023, Karen too passed away. (*Id.*)

On March 18, 2024, Plaintiff filed the Amended Complaint. (DE 14.) In it, Plaintiff alleges four claims against MetLife: breach of contract, bad faith, negligence, and negligent misrepresentation. Plaintiff alleges that "[t]he continuation of [Decedent's] optional life insurance coverage was accepted by [MetLife], and [MetLife] has accepted all required premiums for the continuation coverage." (DE 14 at 4 ¶ 11.) Plaintiff also alleges that MetLife "and [Decedent] entered into an agreement whereby if [Decedent] passed away Karen would be paid life insurance benefits, as beneficiary under the policy, consistent with the terms of the life insurance policy." (*Id.* at 4 ¶ 10.) Plaintiff further alleges MetLife breached this agreement by failing to pay Plaintiff life insurance benefits. (*Id.* at 4 ¶ 11.)

## LEGAL STANDARD

A motion to dismiss for failure to state a claim challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Id.* To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must

4

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). While a complaint "does not need [to allege] detailed factual allegations," pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). In other words, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged but it has not 'show[n]' 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

### A.     Breach of Contract

MetLife contends, among other things, that Plaintiff's breach of contract claim must be dismissed because Plaintiff has not alleged facts to support coverage under any contract with MetLife. (DE 15-1 at 7–8.) The Court agrees. "Actions on a contract must be based on the terms of the contract." *Crenshaw v. Erskine Coll.*, 432 S.C. 1, 24, 850 S.E.2d 1, 13 (S.C. 2020). "The elements for a breach of contract are the existence of a contract, its breach, and damages caused by such breach." *Hotel & Motel Holdings, LLC v. BJC Enters., LLC*, 414 SD.C. 635, 652, 780 S.E.2d 263, 272

(S.C. Ct. App. 2015) (internal quotation marks omitted).  To obtain a conversion-period death benefit under the Policy, Decedent must have died within thirty-one days of loss of coverage or completed and returned the continuation of coverage form within the prescribed period.  (*See* DE 15-2 at 14.)  Plaintiff does not allege Decedent died within thirty-one days of the loss-of-coverage date of January 1, 2023.  (DE 14 at 3 ¶ 6.)  So, coverage could only exist if Decedent continued his coverage under the Policy as an eligible retiree.

Plaintiff argues he "adequately alleges the existence of a contract in his Amended Complaint[]" because MetLife "accepted the continuation forms and provided Plaintiff with a bill for the premiums necessary to continue the group life insurance policy." (DE 17 at 5.)  Plaintiff further argues that,

> The p[olicy] is unambiguous that Defendant had the duty to provide Plaintiff's decedent with the continuation forms three to five days after it received notification of the lapse in coverage. (Am. Compl. Ex. A). Defendant did not provide Anthony with the necessary continuation forms until February 15, forty-five days after his lapse in coverage. (Id. Ex. B). Therefore, it would have been impossible for Anthony to elect to continue his coverage within the time set forth in the p[olicy] (thirty-one days), as Defendant made it impossible to do so.

(*Id*. at 6.)  The Court notes that the Policy says, "MetLife will mail you a conversion packet. Packets are sent via U.S. mail three to five business days after MetLife receives the eligibility file from PEBA."  (DE 15-2 at 14.)  Plaintiff's Amended Complaint does not allege facts suggesting MetLife failed to do so.  Instead, the Amended Complaint says only:

> The continuation of his optional life insurance coverage was accepted by Defendant, and Defendant has accepted all required premiums for the continuation coverage. Anthony passed away and, shortly thereafter, Karen passed away.  Plaintiff, as Personal Representative of the Estate

6

of Karen Gause, filed a claim for life insurance benefits with the Defendant, but Defendant has failed and refused to pay him any monies or provide him with the benefits of the policy.

(DE 14 at 4 ¶ 11.) Moreover, while Plaintiff alleges MetLife accepted the continuation of Decedent's optional life insurance coverage, the election was invalid. Plaintiff's Amended Complaint incorporates a form purportedly submitted on March 2, 2023. (DE 14-3 at 2–8.) Plaintiff signed the form as "attorney-in-fact." (*Id.* at 8.) At any rate, Plaintiff's power of attorney terminated when the Decedent passed away on February 16, 2023, and so, Plaintiff had no right to sign or submit insurance documents as Decedent's attorney in-fact. *See* S.C. Code Ann. § 62-8-110(a)(1) ("A power of attorney terminates when the . . . principal dies"). Accordingly, Plaintiff's breach of contract claim must fail.[2]

### B.     Bad Faith

MetLife also contends that Plaintiff's bad-faith claim against it cannot survive MetLife's motion to dismiss. A party claiming bad-faith denial must demonstrate

> (1) the existence of a mutually binding contract of insurance between the plaintiff and the defendant; (2) refusal by the insurer to pay benefits due under the contract; (3) resulting from the insurer's bad faith or unreasonable action in breach of an implied covenant of good faith and fair dealing arising on the contract; (4) causing damage to the insured.

---

[2]     The Amended Complaint equally fails to allege a contract provision that was breached. *See N. Charleston Cmty. Interfaith Shelter v. Bank of Am., N.A.*, No. 2:16-CV-1250, 2017 WL 6622506, at *3 (D.S.C. Dec. 27, 2017) ("Additionally, a claimed breach of contract must be evidenced by an express contractual provision."). Although Plaintiff alleges that MetLife breached the Policy by failing to pay life insurance benefits to Plaintiff (DE 14 at 4 ¶ 11), this is no more than a conclusory statement.

*Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1,6, 466 S.E.2d 727, 730 (1996). That said, since the Court has determined Plaintiff has failed to state a claim for coverage, Plaintiff cannot state a bad-faith claim.

## C.     Negligence and Negligent Misrepresentation

Plaintiff's Amended Complaint asserts "alternative" causes of action of negligent misrepresentation and negligence if there is no insurance contract. (DE 17 at 9.) MetLife moves to dismiss these claims because, among other reasons, the Decedent's estate is not a plaintiff here. The Court agrees. Under South Carolina law, "a personal representative of a decedent domiciled in this State at his death has the same standing to sue and be sued in the courts of this State and the courts of any other jurisdiction as his decedent has immediately prior to death." S.C. Code Ann. § 62-3-703(c). But Plaintiff brought this action as the personal representative of his *mother*, Karen Gause, not the Decedent. Plaintiff has not pleaded that he is the personal representative of the Decedent. Plaintiff, thus, cannot bring these tort claims on behalf of the Decedent.

## CONCLUSION

For these reasons, the Court grants MetLife's Motion to Dismiss (DE 15) Plaintiff's Amended Complaint without prejudice.

**IT IS SO ORDERED.**

Joseph Dawson, III
United States District Judge

Florence, South Carolina
November 4, 2024